# Richmond.

CITY OF LYNCHBURG V. D. L. TAYLOR, COMMISSIONER OF THE
REVENUE.

April 2, 1931.

Present, Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*T. G. Hobbs,* for the petitioner.

*Aubrey E. Strode,* for the respondent.

EPES, J., delivered the opinion of the court.

The city of Lynchburg is here invoking the original jurisdiction of this court to issue a writ of mandamus; and prays that a writ of mandamus may be directed to D. L. Taylor, commissioner of revenue for the city of Lynchburg, directing him to prepare the land books for the year 1931, and for the subsequent years until the next general assessment, on the basis of the general reassessment of real estate as made by the land assessors which was filed in the clerk's office of the Corporation Court of the city of Lynchburg on September 27, 1930, subject only to the 1072 specified changes made by orders entered by the local board of equalization for said city and to disregard an order entered December 31, 1930, by said board, ordering a blanket reduction of one-fifth in all assessments.

The petition sets forth the following facts. The land assessors appointed in accordance with section 242 of the Tax Code (Acts 1930, p. 870, c. 411), to make a general reassessment of real estate in the city of Lynchburg in 1930, completed and filed their assessments in the clerk's office of the corporation court of the city on October 27, 1930, and delivered a copy thereof to D. L. Taylor, the commissioner of the revenue for the city, and to the local board of equalization, which had been appointed by the corporation court of the city in accordance with section 344 of the Tax Code of Virginia (Acts 1930, p. 874, c. 411).

The general reassessment made by the land assessors contains assessments of 12,477 separate parcels of real estate, and fixes the total assessed value of the real estate assessed at $38,383,493.00.

Acting in accordance with the provisions of sections 344-347 of the Tax Code of Virginia (Acts 1930, p. 874-876,

c. 411) the local board of equalization entered orders changing the assessed value of 1,072 parcels of real estate as fixed by the assessors, which changes resulted in reductions in assessed values totaling $846,200.00.

After having made these 1,072 changes, the local board of equalization, on December 31, 1930, the day on which under the statute its term of office expired, entered an order making a blanket reduction of one-fifth in the assessed value of every parcel of real estate in the city of Lynchburg, such reduction to be made after having first given effect to the 1,072 changes theretofore ordered by the board.

The material parts of this order, which is set forth at length in the petition, read as follows:

"Whereas the law provides that the board of equalization shall be charged with the especial duty of increasing, as well as decreasing, assessments, if in its judgment the same be necessary to equalize and accomplish the end that the burden of taxation shall rest equally upon all; and

"Whereas the board of equalization is of the opinion that in order to accomplish this it is necessary to reduce the assessment on lands and buildings in the city of Lynchburg;

"Therefore, this board doth order and direct that the assessed value of each and every parcel of land, or parcel of land and building, as shown in the books of reassessment on real estate in the city of Lynchburg, Va., filed by the land assessors in the clerk's office of the corporation court for the city of Lynchburg, October 27, 1930, be reduced one-fifth (1/5). This order to apply to every item on the said book, after all changes directed by the orders of this board, heretofore entered, have been made."

The city council, by resolution, directed Mr. D. L. Taylor, the commissioner of revenue, to disregard in making up his land books for the year 1931 this blanket reduction order. To this request Mr. Taylor replied, in part, as follows:

"I regret that I am unable to comply with this order.

Section 346 of the Tax Code of Virginia provides, in part, as follows: 'The commissioner of revenue shall make on his land books the changes so ordered by the board,' referring to orders entered by the board of equalization. I will, therefore, have to proceed with the land books on the basis of the order entered by said board making a one-fifth cut in the general reassessment."

D. L. Taylor, commissioner of revenue, filed a demurrer and answer to the petition here filed by the city of Lynchburg; and certain taxpayers of the city of Lynchburg have filed a petition of intervention in which they seek to uphold the validity of the blanket reduction order of December 31, 1930.

■ In the view which we take of the case it is necessary to consider only one question: Has a local board of equalization, under sections 344-347 of the Tax Code (Acts 1930, pp. 874-876, c. 411), the power, after having proceeded to equalize as among themselves the individual items of the general reassessment of real estate made by the land assessors, to make an uniform percentage reduction or increase in every item of the general assessment made by the land assessors?

Sections 242-247 of the Tax Code (Acts 1930, pp. 870, 871, c. 411) provide for the appointment of land assessors, and the assessment of real estate by them.

Section 242 provides for a "general reassessment of real estate in the cities and counties of the Commonwealth in 1930 and every fourth year thereafter," and that "every such general reassessment of real estate shall be made by the land assessor or assessors appointed as provided for in this section."

Section 244 provides that the land assessor or assessors appointed in pursuance of section 242 shall "proceed to examine all lands and lots assessable by him, or them, with the improvements and buildings thereon, within his or their city or county, and shall, upon examination, ascertain and assess the fair market value thereof."

Section 247 of the Tax Code (Acts 1930, p. 871, c. 411) provides that the land assessor "shall file the original of such reassessment" in the clerk's office of the circuit or corporation court of the county or city, and deliver a copy thereof to the commissioner of the revenue and to the local board of equalization of the county or city.

Section 250 of the Tax Code (Acts 1930, p. 872, c. 411) provides that "taxes for each year on real estate subject to reassessment shall be extended on the basis of the last general reassessment made prior to such year, subject to such changes as may have been lawfully made."

Section 251 of the Tax Code (Acts 1930, p. 872, c. 411) provides for the taxation of real estate, and that for the purpose of taxation "the value of real estate, as ascertained at a general reassessment * * * shall only be changed to allow the addition of the value of improvements, or a total or partial deduction of the value of such improvements, except so far as the same are directed to be corrected by a court of competent jurisdiction *or by the local board of equalization in the exercise of powers expressly conferred by law.*"

Sections 344-347 of the Tax Code (Acts 1930, pp. 874-876, c. 411) provide for the appointment of local boards of equalization, and prescribe their powers and duties.

Sections 345 and 346 read as follows:

Section 345. "Each board of equalization shall sit at and for such time or times as may be necessary to discharge the duties imposed and to exercise the powers conferred by this chapter. Of each sitting public notice shall be given at least ten days beforehand by publication in a newspaper having general circulation in the county or city, and, in a county, by also posting the notice at the courthouse and at each voting precinct. Such posting shall be done by the sheriff or his deputy. Such notice shall inform the public that the board shall sit at the place or places and on the days named therein for the purpose of equalizing real estate assessments in such

county or city and for the purpose of hearing all complaints of inequalities including errors in acreage in such real estate assessments. The board shall hear and give consideration to such complaints and equalize such assessments, and shall, moreover, be charged with the especial duty of increasing as well as decreasing assessments, whether specific complaint be laid or not, if in its judgment the same be necessary to equalize and accomplish the end that the burden of taxation shall rest equally upon all citizens of such county or city. The commissioner of the revenue of such county or city shall, when requested, attend the meetings of the board, without additional compensation, and shall call the attention of such board to such inequalities in real estate assessments in his county or city as may be known to him. Every board of equalization may go upon and inspect any real estate subject to equalization by it."

Section 346. "Any taxpayer may apply to the board of equalization for the equalization of his assessment, including errors in acreage; and any county or city through its appointed representative or attorney may apply to the board of equalization to equalize the assessment of any taxpayer. The board shall hear and determine any and all such petitions, and, by order, may increase, decrease or affirm the assessment of which complaint is made; and, by order, it may increase or decrease any assessment, upon its own motion; provided, however, that no assessment shall be increased until after the owner of the property has been notified and given an opportunity to show cause against such increase, unless such owner has already been heard.

"The attorney for the county, city or town, or any taxpayer, aggrieved by any such order, may apply to the circuit court of the county or any city court of record of the city, for the correction and revision of such order, in the same manner and within the same time as is provided by law for the cor-

rection of erroneous assessments of real estate by any person who is aggrieved thereby.

"The board shall have power to direct the commissioner of the revenue to enter upon the land books real estate which is found to have been omitted, and to cancel duplicate assessments of real estate.

"The board shall keep minutes of its meetings, and enter therein all orders made and transmit promptly copies of such orders as relate to the increase or decrease of assessments to the taxpayer and commissioner of the revenue. The commissioner of the revenue shall make on his land book the changes so ordered by the board, and if such changes affect the land book for the then current year, and such land book has been then completed, the commissioner of the revenue may for that year make a supplemental assessment in case of an increase in valuation; and in case of a decrease in valuation, the order of the board shall entitle the taxpayer to an exoneration from so much of the assessment as exceeds the proper amount, if the taxes have not been paid by him, and in case the taxes have been paid, to a refund of so much thereof as is erroneous."

When the several sections of the Tax Code are read together, it is plain, we think, that the intent of these statutes is that the general reassessment of real estate is to be made by the land assessor, not by the local board of equalization; and that the function of the local board of equalization is primarily to equalize as among themselves the several items of the assessment made by the land assessors, and its other powers and duties are incidental to this primary function and power.

The local board of equalization is "charged with the especial duty of increasing as well as decreasing assessments, * * * if in its judgment the same be necessary to equalize and accomplish the end that the burden of taxation shall rest equally upon all citizens of such county or city." But this language must necessarily be interpreted to comprehend and

apply only to the assessments made by the land assessors. The assessment made by the land assessor is completed and the term of the local board of equalization appointed to equalize it has expired before the assessments of any other property, real or personal, applicable for the years in which the general assessment of real estate is applicable are made. Manifestly, then, the sections cannot be construed to require or empower the local board of equalization to equalize the assessments of real estate made by the land assessors with assessments made by other agencies, which by the statutes are required to be made after the term of office of the local board of equalization has expired.

The general land assessment made by the land assessor as equalized by the local board of equalization is not applicable until 1931; but is applicable in 1931 and the next succeeding four years. The term of office of the local board of equalization which is empowered to equalize the general land assessment made in 1930, expired December 31, 1930. The assessments of tangible and intangible personal property, and of real estate assessable by agencies other than the land assessors (as for instance, the real estate of railroad companies which is assessable by the State Corporation Commission) are made annually in the year for which the assessments are applicable. Clearly the statute has not either empowered or required the local board of equalization of 1930 to equalize the general re-assessment of real estate made in 1930 with the assessments of property to be made annually by other agencies in 1931, 1932, 1933, 1934 and 1935.

█ The local board of equalization is a board of special and limited jurisdiction. It has the power to make such decreases and increases in the several items of the general re-assessment of real estate as are necessary or proper to equalize as among themselves the several items of such assessment; and as incidental to this end is given the power to correct individual items of the assessment which are erroneous, including

errors in the quantity of land assessed. It is also expressly given the further power to cancel duplicate assessments and to assess items of property incorrectly omitted by the land assessor. But its function is to equalize the general reassessment made by the land assessor, not to make a new general assessment.

When a local board of equalization after having proceeded to equalize the several items of a general reassessment, then orders a general reduction of twenty per cent in all items of the assessment, including those which it has changed to effect an equalization of the assessment, such action can have no relation whatever to the equalization among themselves of the several assessments made by the land assessor. It is, in effect, the making of a new general assessment by the local board of equalization, which is beyond the scope of its jurisdiction.

For the reasons stated the general reduction order entered by the local board of equalization on December 31, 1930, is invalid and the writ of mandamus will be issued as prayed by the city of Lynchburg.

*Mandamus awarded.*