## HAYES *v.* CITY OF JACKSON.

1. TAXATION—BOARD OF REVIEW—CERTIFICATE OF REVIEW OF ASSESS-
MENT ROLL.

   Failure of city board of review to attach signed certificate show-
   ing a review of city assessment roll does not invalidate the roll
   in absence of charter provisions to such effect (1 Comp. Laws
   1929, § 3419).

2. SAME—ARBITRARY REDUCTION OF PERSONAL PROPERTY VALUATION
—CONSTITUTIONAL LAW.

   Local board of review has no right to arbitrarily reduce valuation
   set upon personal property but must keep it at the true cash
   value as required by the Constitution (art. 10, § 7).

3. SAME—REDUCTION OF PERSONAL PROPERTY VALUATION.

   Reduction of valuation on personal property upon complaint of
   taxpayer from $35,000 to $30,000 was within power of city
   board of review, but further attempted general reduction of
   20 per cent. on all property subject to review was void.

Appeal from Jackson; Simpson (John), and Wil-
liams (Benjamin), JJ. Submitted April 12, 1934,
(Docket No. 94, Calendar No. 37,583.) Decided
June 4, 1934.

Assumpsit by Clarence B. Hayes, receiver of Ho-
tel Hayes Company, a Michigan corporation, against
City of Jackson, a municipal corporation, to recover
sums paid under protest for personal property tax.
Judgment for defendant. Plaintiff appeals. Af-
firmed.

*Whiting, Kleinstiver & Aubrey,* for plaintiff.

*Burney E. Brower,* for defendant.

BUTZEL, J. Under the charter of the city of Jackson, Michigan, the board of review, consisting of three members appointed by the city commission, are to meet at a designated time and place to review, amend and correct the assessments made by the assessor, and for that purpose have the same powers and perform the same duties in all respects as a board of review in townships in reviewing, amending and correcting assessments. Further pertinent provisions of the charter are as follows:

"(155) SEC. 3. The board of review shall have power and it shall be its duty to amend and correct any assessment or valuation and to place upon the assessment roll of the city any taxable property, real or personal, not already assessed, held or owned by any person or persons and to strike from said rolls any property, real or personal, wrongfully thereon. Any person considering himself aggrieved by reason of any assessment, may complain thereof either verbally or in writing before said board, and on cause being shown to the satisfaction of such board, it shall review the assessments complained of, and may alter and correct the same and may increase or diminish any assessment as justice may require. The concurrence of a majority of the board shall be sufficient to decide any question of altering or correcting any assessment complained of.

"(156) SEC. 4. The board shall elect one of its members as chairman. The city clerk shall be the clerk of said board. It shall be the duty of said clerk to keep a record of all the proceedings of said board in a book provided for that purpose, to make regular entries of all resolutions and decisions on all questions, to record the vote of each member on any question submitted to the board, if required by any member present, and to file and preserve all petitions, affidavits and other written documents presented to the board. No assessment shall be

changed, except by a motion or resolution adopted by a majority of the members of said board, which motion or resolution shall state the amount at which the assessment is fixed as reviewed by the board. Each day's proceedings of said board shall be read, approved and signed by the chairman thereof. The assessor shall attend all meetings of the board of review and shall give such information as shall be required of him, but shall have no vote.

"(157) SEC. 5. At the conclusion of the review of said rolls said board shall attach its certificate signed by a majority of said board to said rolls showing they have been reviewed by said board as required in this charter. No person other than the members of said board shall make any change in or additions or corrections to said rolls. Said board of review shall keep said rolls carefully in its custody during the time it is in session, and at the conclusion thereof deliver said rolls duly certified to the city clerk.

"(158) SEC. 6. The city clerk shall immediately proceed to make therefrom complete copies of such assessment rolls for the use of the city commission, which shall be deemed the city assessment roll for that year. When such copies shall be completed, and within 15 days after receiving such rolls, the city clerk shall redeliver the same to the assessor to be used for State, county and school purposes: Provided, That the city commission may extend the time of redelivering said roll as aforesaid not to exceed 15 days."

The city assessor, with the assistance of a staff of 10 employees, made up the assessment rolls for the year 1933. They devoted a period of approximately seven months to the reassessment of all the taxable property of the city. All the real estate was assessed in accordance with the "Cleminshaw System of Valuations." The record does not indicate that any other method than that prescribed by the

Constitution and the statutes was used in assessing personal property. The rolls were turned over to the board of review and some 350 descriptions of real estate and personal property were equalized out of 850 brought to the board's attention by complaints. On June 10, 1933, the last day of their session, after the completion of the review and the correction of assessments on specific parcels of property, as set forth in detail in the record book of their minutes, the following action also is shown to have taken place:

"Chairman Wright called Mr. Lewis to the chair. Mr. Kavanaugh then moved that this board make a further reduction of 20 per cent. over all reductions and increases already made after having equalized values, such reduction to apply to real and personal valuations but not to exemptions as fixed by this board. Mr. Lewis opposed the adoption of this motion and said he would submit a minority report and that he would ask the court for an injunction against such proposed reduction being made. He requested that the city attorney be present but both Mr. Wright and Mr. Kavanaugh said there was no need for him to be called. Mr. Lewis then asked Mr. Wright to take the chair which he did. Chairman Wright then put Mr. Kavanaugh's motion and it carried by the following vote: Yeas— Mr. Kavanaugh and Chairman Wright. Nay—Mr. Lewis. The board then recessed for lunch.

(1:30 p. m.)

"Board of review then called to order by Chairman Wright. Mr. Lewis offers the following motion:

" 'I move that this board of review adopt and confirm the valuations on both real and personal property made by the city assessor, except the corrections, alterations and exemptions that have al-

ready been made by this board and that no general reduction in said values be made; that it is beyond the jurisdiction and purpose of this board to do so.'

"Signed: 'GEORGE E. LEWIS.'

"This motion received no support. Mr. Kavanaugh then moved the adoption of the following resolution:

" 'Resolved, that the figures assessed and extended in the several tax rolls in the city of Jackson, Michigan, be, and the same are, hereby declared to be the figures and valuations fixed by the board of review as the true and lawful valuations for the year 1933.'

"Signed: 'W. W. WRIGHT, Chairman.'

"The vote to adopt the foregoing resolution: Yeas—Mr. Kavanaugh and Chairman Wright. Nay—Mr. Lewis.

"No further business being presented, on motion of Mr. Kavanaugh, supported by Mr. Lewis, the board adjourned *sine die*.

Chairman."

The normal procedure of the board of review was as follows: After considering each assessment complained of, the board made out a slip, marking in the appropriate columns the original valuation placed on the property by the assessor, and the changed valuation fixed by the board. This slip was then filed with the city assessor and a duplicate thereof with the city clerk, who also acted as clerk of the board of review. Upon receipt of the slip, thus filled in, the city assessor's office made the changes as directed, and they were then checked by the city clerk. In the instant case, the personal property assessment of the Hotel Hayes Company, a Michigan corporation, of which plaintiff Clarence B. Hayes is receiver, was originally fixed at $35,000, but, upon complaint, was reduced by the board of

review to $30,000. The board thereupon made out a slip showing the reduction of plaintiff's assessment from $35,000 to $30,000, and the change was duly made by the assessor. The latter did not, however, reduce the assessment, or any others, a further 20 per cent. in accordance with the resolution adopted by the board of review at its meeting on the morning of June 10, 1933.

On July 20, 1933, plaintiff paid the personal tax for the fiscal year 1933, amounting to $299.46 under protest. After further protecting his rights, if any, to a refund of the tax, or a part of it, by having his protest duly noted in the rolls and by filing his claim, he brought suit for a return of the entire amount paid, or as an alternative, should the tax levy not be held void in its entirety, for a return of 20 per cent. of the amount paid, to correspond with the resolution of the board of review reducing all valuations to that extent. The case was heard without a jury by the two judges of the Jackson circuit court, sitting *en banc*. They rendered a judgment for defendant.

It will be noted that at the morning session of the board of review on June 10, 1933, the resolution for the general 20 per cent. reduction was adopted by a vote of two of the three members of the board. The third member opposed it and asked that its consideration be withheld until advice could be secured as to its legality. At the afternoon session, after the dissenting member had unsuccessfully attempted to have a resolution adopted confirming the valuations as fixed by the board without the 20 per cent. reduction, a resolution was adopted by a vote of two to one declaring that the figures assessed and extended on the several tax rolls be the valuations fixed by the board as the true and lawful valuations for the year 1933. It was upon this last resolution that the

assessor and city clerk acted. No mention of the 20 per cent. reduction was made in this last resolution. Furthermore, there were no figures indicating such reduction either on the several tax rolls or on the slips filled out by the board. The assessor set down the valuations at their original amount, with the exception of the changes in the 350 specific cases where reductions or increases had been made by the board of review.

Appellant's first claim is that the entire assessment is void because the board did not attach to the rolls a certificate signed by a majority thereof, showing a review as required by the charter (section 157). Under the provisions of 1 Comp. Laws 1929, § 3419, it is expressly provided that the omission of such indorsement by the board of review shall not affect the validity of the roll. Inasmuch as the charter makes no provision as to the result of a failure of the board of review to sign the roll, we must look to the general tax law. This court has held that a failure to sign the rolls does not invalidate them. *Auditor General* v. *Sparrow,* 116 Mich. 574; *City of Yale* v. *Michigan Farmers' Mutual Fire Ins. Co. of St. Clair & Sanilac Counties,* 179 Mich. 254. The trial judges held that the absence of a signature by the board of review was not fatal, and that the last resolution adopted by the board, confirming the rolls but not mentioning the 20 per cent. reduction, was final. The question raised relative to the exclusion of testimony offered to show the meaning of the final resolution of the board, and what actually took place when it was adopted, and the question as to the power of the board of review to make a change in the assessment without any complaint being filed, need not be discussed in view of our decision as to the real question in the case, upon which the trial judges largely based their conclusions.

The court considered the essential question to be whether the board of review had the power of its own volition to make a 20 per cent. horizontal reduction of all assessments, both real and personal, after the city's budget had been prepared and the valuation made by the tax assessor. This issue may be still further narrowed to the question whether a 20 per cent. horizontal omnibus reduction can be legally made on all assessments of personal property.

In preparing the assessment rolls submitted to the board of review, the assessor and his assistants had reduced the former valuations by approximately $16,000,000, bringing the total valuation down to $69,000,000. The city manager and the commission had agreed upon a budget which required the raising of the sum of $683,988.28. This would necessitate a city tax of almost one per cent. of the total valuation of city property, the maximum rate permitted under the charter. Were the 20 per cent. reduction attempted by the board on June 10th a proper one, it would have left only taxable property in the value of $54,000,000, with the result that, under the tax limit of one per cent., only $540,000 could have been collected had all taxes been paid. Since the city charter requires that the budget be adopted by the city commission not later than June 15th, this would have necessitated cutting approximately $144,000 out of the budget within a period of a few days. Appellee contends that this is a cogent reason why a horizontal decrease of all valuations could not be made, and that it was not within the power of the board of review to set its judgment against that of the city commission and force a lowering of the budget, since its powers were limited to the equalizing of values upon complaint and cause shown. Our attention is called to the case of *City of*

*Lynchburg* v. *Taylor, Commissioner of the Revenue,*
156 Va. 53, 62 (157 S. E. 718), where the board of
equalization attempted to make a like reduction of
20 per cent. after having equalized specific items of
property brought to its attention. The court held
that:

"When a local board of equalization after having
proceeded to equalize the several items of a general
reassessment, then orders a general reduction of
20 per cent. in all items of the assessment, including
those which it has changed to effect an equalization
of the assessment, such action can have no relation
whatever to the equalization among themselves of
the several assessments made by the land assessor.
It is, in effect, the making of a new general assess-
ment by the local board of equalization, which is be-
yond the scope of its jurisdiction."

To like effect see *Avery* v. *City of East Saginaw,*
44 Mich. 587. Counsel for appellant, citing *Petos-
key & Bay Shore Gas Co.* v. *City of Petoskey,* 162
Mich. 447, however, maintain that the instant case
cannot be governed by the decisions in this or other
States based on charters and tax laws possibly dis-
similar to those here involved.

The question becomes unimportant in the instant
case for, even were appellant correct in its conten-
tion as to the validity of the horizontal reduction
in the values of real estate, the board of review had
no right to make any arbitrary reduction in the val-
uation set upon personal property. By constitu-
tional enactment all tax assessments must be made
on property at the true cash value (Constitution of
1908, art. 10, § 7). It might be claimed that the
horizontal reduction as to real estate was proper, on
the ground that the system used by the assessor in
determining the value of the real estate resulted

in excessive valuations, or that the assessments did not sufficiently reflect the depreciation in the values of real estate. However, where personal property is assessed, a different problem arises. The taxpayer is required to make a sworn statement of his personal property, and the assessor may make a physical examination thereof, or list any not disclosed by statement. Personal property necessarily is of such varying form that no general rule can be applied either to depreciation or reductions in value. Each species must be separately assessed. Taxable stocks and bonds, staples, etc., have a market, and as a rule, a cash value. Moneys are worth par. Other personal property may have an uncertain value. It is beyond the power of the board of review to ignore the provisions of the Constitution making property taxable at its true cash value, by arbitrarily reducing valuations of personal property 20 per cent. Cash value is not thus determined. The exercise of such arbitrary power might lead to embarrassing and untoward results in municipal government.

In reducing the valuation of plaintiff's property from $35,000 to $30,000, the board acted within its powers. However, the attempted action to reduce it a further 20 per cent. was void.

The tax as levied without the 20 per cent. reduction was therefore correct, and the judgment for defendant was properly rendered. It is herewith affirmed, but without costs, as the question is a public one.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.